JAMES TAYLOR v. DAVID L. SAYRE AND CHARLES PETERSON.

1. The award of arbitrators, or the report of a referee cannot be set aside by the court, except for the misbehavior of the arbitrators or referee, or because the award was procured by corruption. But when the report

of the arbitrator, or reasons, or other papers accompanying it, shows that the arbitrator has mistaken the law or the facts, or the arbitrator admits that he has made a mistake, it is such misconduct as will set aside the award.

2. It is not error to exclude parol evidence that a written assignment of goods in a store was intended to include the store books.

3. Whether a writ of error will lie to reverse the decision of an inferior court refusing to set aside an award on a rule to show cause. *Quere.*

POTTS, J. Sayre and Peterson sued out an attachment against William Brown, in the Somerset Circuit Court, and the sheriff thereupon attached the said William Brown by, among other things, *his books of account in the hands of James Taylor, appraised at the sum of six hundred dollars,* &c. In due time the auditors reported that there was due the plaintiffs from Brown the sum of six thousand three hundred and nine dollars and ninety-one cents, whereupon judgment was entered for that sum with forty-five dollars and ninety-three cents costs.

Subsequently a *sci. fa.* issued against Taylor, the garnishee, to show cause, if any he had, why executions should not issue against the rights and credits, &c., of said Brown, in his hands; to which Taylor pleaded that he had no goods or chattels of the said William Brown in his custody or possession, either at the time of executing the writ of attachment or at any time since, *nor was he indebted to the said William Brown;* upon which plea issue was joined. And thereupon, by consent of the parties, it was ordered that the cause, and the matters therein in difference between the parties, be referred to the award, order, abitrament, final end and determination of Hugh M. Gaston, Esq.

The referee made his award in favor of the plaintiffs, and that the sum of one hundred and sixty-six dollars and fifty cents was received by the said Taylor from and upon the books of account of William Brown attached in his hands, and that execution should issue upon the judgment in attachment for that amount against said Taylor; and accompanied the said report with a statement in writing of the grounds upon which he based said report, both as to the law and the facts.

At the same term, December, 1851, a rule to show cause why the said report should not be set aside, was granted and entered, and at the September term, 1853, the court having inspected the proceedings and report, and heard counsel upon the reasons assigned for setting said report aside, ordered the report to be confirmed in all things, and final judgment was thereupon entered for the said sum so reported, with costs ; which judgment is brought here by writ of error.

The errors assigned are :

I. That the declaration is not sufficient in law.

II. That the court below should have set aside the award.

III. That the award should have been for the defendant below.

The cause has been argued upon a state of the case agreed upon, and the outbranches of the record, brought here by *certiorari*.

The first section of the " act for regulating references and determining controversies by arbitration," (*Rev. St.* 113,) provides, that all persons who are desirous of *ending* by arbitration any controversy, &c., may agree that their submission of the same to the award of any person or persons, shall be made a rule of court, &c., and a rule shall thereupon be made by the said court that the parties shall submit to, and *finally be concluded* by the arbitration which shall be made, &c., and that " in case of disobedience to such arbitration, &c., the party refusing or neglecting to perform and execute the same or any part thereof, shall be subject to all the penalties of contemning a rule of court, where he is a suitor or defendant in such court, and the court, on motion, shall issue process accordingly, which process shall not be stopped or delayed in its execution by any order, rule, command or process of any other court, either of law or equity, unless it shall be made to appear on oath or affirmation to such court *that the arbitrator or umpire misbehaved themselves,* and that such award, arbitration, or umpirage, *was procured by corruption or other undue means.*" And the second section provides that *if it shall so appear,* it may be set aside by any

court of law or equity, so as complaint of such corruption or undue practice be made in the court where the rule is made for submission, &c., before the last day of the next term after such arbitration, &c, has been made and published to the parties.

These two sections are copied from the statute of 9 and 10 *William* 3, *Ch.* 15, passed 1698 ; *St. at large* 697 ; and they have often been the subject of examination and construction by the courts both in England and in this state, and it must be considered as well settled.

That no relief can properly be granted except upon the special grounds mentioned in the act, the misbehavior of the arbitrators, or where the award was procured by corruption or other undue means. *Nichols* v. *Roe*, 3 *Mylne & Keen* 431 ; *Stoll's Admr.* v. *Price*, 1 *Zab.* 35.

And the phrase " undue means," includes two other distinct classes of accepted cases ; that is to say—

Where the arbitrator states that he meant to decide according to law, and it appears that he has clearly mistaken the law ; in that case, the court will correct the error, for it will assume that it is not his award, in other words, is not the award he intended to make. *Delver* v. *Barnes*, 1 *Taunton* 48 ; *Kent* v. *Elstob*, 3 *East* 13 ; *Bell* v. *Price*, 2 *Zab.* 590 ; *Watson on Awards*, 59 *Law Lib.* 164.

Where he has mistaken a fact, and the mistake is apparent upon the face of the award, or is admitted by the arbitrator himself, it may be corrected. *Ward* v. *Dear*, *Adol. & Ellis*, 234 ; *Bell* v. *Price*, 2 *Zab.* 590 ; *Watson on Awards*, 59 *Law Lib.* 164.

And where an arbitrator with his award delivers a paper containing the reasons upon which he founds his conclusions, such paper will be taken as part of the award. *Kent* v. *Elstob*, 3 *East* 20.

Taking these principles to be settled, we cannot go behind the rule of reference to inquire into the sufficiency of the pleadings. The arbitrator rightly decided that whether they were informal or not, all defects in them were cured by the reference. The issue was made up in the court before

the submission, and that issue was, whether Taylor, the garnishee, "had any goods or chattels of the said Brown in his custody or possession, either at the time of executing the writ of attachment, or at any other time since, *or was indebted to said Brown.*" This was the matter in difference in the cause which was submitted, and the whole matter. There is no allegation of misbehavior, corruption, or undue influence.

The case as made before the referee was, in substance, as follows:

William Brown, the defendant, purchased a store in Somerville, and on the same day, to wit, the 23d March, 1846, he employed Isaac Brown to take charge of said store and manage it for him, at five hundred dollars a year salary.

On the 27th of March, four days afterward, William Brown bought of Augustus Belknap, of New York, a bill of merchandize amounting to two thousand four hundred and sixty-seven dollars and twenty-three cents, on which he paid five hundred dollars in cash, and gave his note on demand for the balance, one thousand nine hundred and sixty-seven dollars and twenty-three cents.

On the 8th of October, 1847, William Brown assigned and conveyed to Belknap all his right, title, and interest in the merchandize in said store, on condition that said Belknap should release his claims against him, Brown, amounting to three thousand seven hundred and fifty-six dollars and forty cents, and pay all debts contracted for said store previous to said date. And on same day Belknap signed a release accordingly, and agreed to pay the debts as above mentioned.

About September or October, 1848, Belknap sold the store to one Squire, and placed the books in the hands of Taylor for collection, embracing the unsettled accounts from the time of Brown's purchase in 1846; Taylor proceeded to collect the moneys due on them, making the accounts out in the name of William Brown. About May 1, 1849, Brown saw Taylor, and said he had an interest in the books; that he had not assigned the books at the time of the transfer of the store to Belknap.

The plaintiffs were creditors of William Brown, and attached the books so in Taylor's hands, and it was arranged that Taylor should go on and collect the accounts, and pay the proceeds to such of the parties as should turn out to be entitled to the money.

The real controversy before the arbitrator was as to whether the sale of the store by Brown to Belknap, on the 8th of October, 1847, included *the accounts then due on the store books.* If it did, the moneys collected *on those accounts* by Taylor, belonged to Belknap ; if not, they belonged to Brown.

The referee decided that " as a matter of fact, William Brown had an interest in the charges in said books made for goods sold between March 26, 1846, and October 8, 1847; that this interest was both legal and equitable, and was at the time of the levy of the attachment equal at least in amount to the sum found in defendant's (Taylor's) hands " in his report. And also " that defendant having received one hundred and seventy-five dollars and twenty-six cents upon the accounts due William Brown since the attachment, this amount, deducting five per cent. (for collecting) is reported."

I see no reason to believe that the arbitrator has mistaken the facts of the case, or violated any principle of law. If the defendant, Taylor, has chosen to litigate the question whether he had any money of Brown in his hands or not, without requiring any indemnity against the costs, it is his misfortune. We cannot help him.

It is made a point against the award that the arbitrator overruled the testimony of Thomas Collyer. He was a witness to the assignment of the store goods from Brown to Belknap, and was introduced to prove that it was intended to embrace the books. But he testified that at the time " not the first word was said about the money due on the store books." This testimony, if it had been admitted, could not have availed anything. But besides this, I think it was properly overruled. 1 *Greenleaf Ev.,* s. 275, and cases there cited.

The judgment must be affirmed.

The question whether this case is properly here for review has not been raised, and we have not considered it.

HAINES, J., concurred.